UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JONATHAN T. BOURDON and JEFFREY G. WALLS, ) ) ) ) | |
| Plaintiffs, ) ) ) | |
| v. ) ) | Civil Action No. 09-1229 (RBW) |
| RAY MABUS,[1] Secretary of the Navy, et. al., ) ) ) ) | |
| Defendants. ) ) | |

**MEMORANDUM OPINION**

Plaintiffs Jonathan Bourdon and Jeffrey Walls bring this action against various defendants alleging violations of the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (1989) (codified as amended at sections throughout 5 U.S.C.), several common law torts, and 42 U.S.C. § 1983 (2006), stemming from the termination of their employment with the Department of Navy.  Amended Complaint ("Am. Compl.") ¶¶ 1, 4-11, 81-126.  Among other forms of relief, the plaintiffs seek reinstatement, retroactive promotions and benefits, $12 million each in compensatory damages, and $40 million apiece in consequential damages.  Id. at 24-25. Currently before the Court is the motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative for summary judgment pursuant to Rule 56 filed by Ray Mabus, O. Tom Crane, Harris Cummings, and Richard Gilbert ("federal defendants").[2]

---

[1]  The Court has substituted Ray Mabus for the originally named defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2]  In addition to these defendants, the plaintiffs also lodge claims against the following three individuals who are affiliated with the city of York, Pennsylvania: William Wentz, an officer with the City of York police department, Am. Comp. ¶ 8; Jason Rhoades, a firefighter and City Codes Inspector with the City of York; id. ¶ 9; and, Vickie

(continued . . .)

After carefully considering the amended complaint, the parties' written submissions,[3] and the applicable legal authority, the Court concludes for the reasons explained below that it must grant the federal defendants' motion to dismiss.

## I. BACKGROUND

### A.   Plaintiff Jonathan Bourdon

Jonathan Bourdon was employed as a Federal Police Officer with the Naval District of Washington ("NDW") from June 17, 1996 until May 26, 2007. Am. Compl. ¶¶ 2, 32. In 1998, 2001, and 2005, he "applied for promotions and each time . . . was not selected." Id. ¶ 21. In April 2004, Bourdon also applied for one of six open Sergeant positions, but was not selected. Id. ¶ 22. According to Bourdon, "only members of the local union bargaining committee were selected" for the Sergeant position, including a female applicant with lower scores than him on one aspect of the selection process. Id. ¶¶ 22-23. The unsuccessful effort to acquire the Sergeant position led Bourdon to submit a formal complaint to the United States Equal Employment Opportunity Commission ("EEOC") on June 22, 2005.[4] Id. ¶ 25. "On or about February 6,

---

(. . . continued)
Washington, a York City Council member, id. ¶ 10. All of the defendants listed in the amended complaint are sued in their official capacities. Id. ¶¶ 4-11. The amended complaint also asserts claims against Stanley Johnson, id. ¶ 84, in his official capacity as the former Naval District of Washington Union Committee Chairman, id. ¶ 11. None of these defendants have made appearances in this action, nor does the docket reflect proof of service of process upon these defendants. Accordingly, the Court will contemporaneously issue an Order directing the plaintiffs to furnish the Court with proof of service of process upon defendants Johnson, Wentz, Rhoades, and Washington.

[3] The Court considered the following documents in reaching its decision: (1) Memorandum of Points and Authorities in Support of Federal Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Mot."); (2) Plaintiff Bourdon and Walls' Opposition to the Federal Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pls.' Opp'n"); (3) the Federal Defendants' Reply Brief ("Defs.' Reply"); (4) the Federal Defendants' Statement of Material Facts Not in Genuine Dispute ("Defs.' Facts"); and (5) the Plaintiffs' Statement of Material Facts in Dispute. Where appropriate, the Court also considered the exhibits attached to some of these filings.

[4] Bourdon, who is Caucasian, also filed Equal Employment Opportunity complaints in 1996 and 1997 in response "to . . . racial taunts and discrimination . . . he encountered as a result of his relationship with Ms. [Angela] Parks," an African American female. Am. Compl. ¶¶ 16, 19-20.

2007, the EEOC dismissed Bourdon's complaint with prejudice. Bourdon appealed this dismissal and the decision was confirmed." Id. ¶ 30.

Meanwhile, on or about November 30, 2006, Bourdon was involved in a verbal altercation with a York, Pennsylvania off-duty firefighter. Id. ¶ 51; Defs.' Mot., Exhibit ("Ex.") 1 (Notice of Proposed Indefinite Suspension Without Pay) at 1. During this incident, which occurred when Bourdon was off-duty, he allegedly "identified [himself] as a Federal Marshall[,] . . . showed the firefighter [his] badge[,] and said in words to the effect that if [the firefighter] messed with Tony he messed with you and that you had the federal government backing you." Defs.' Mot., Ex. 1 (Notice of Proposed Indefinite Suspension Without Pay) at 1. As a result of this incident, the York Police Department issued an arrest warrant for Bourdon "based on the charge of Official Oppression." Id. Also following this purported incident, the Navy proposed to suspend Bourdon indefinitely without pay for Conduct Unbecoming a Police Officer. Id. The proposed indefinite suspension was implemented on January 16, 2007. Am. Compl. ¶ 28; Defs.' Mot., Ex. 2 (Decision on Proposed Indefinite Suspension) at 1-2.

On January 30, 2007, Bourdon appealed his indefinite suspension to the Merit Systems Protection Board ("MSPB"). Am. Compl. ¶ 29. On March 26, 2007, the Navy informed Bourdon of its intention to remove him from federal employment for "conduct unbecoming a NDW police officer, providing false information to an investigator[,] and failure to cooperate in an Agency Investigation." Am. Compl. ¶ 31. The Navy acted on the proposed removal on May 4, 2007, Defs.' Mot., Ex. 5 (Decision on Proposed Removal) at 2, and Bourdon's employment was terminated on May 26, 2007, Am. Compl. ¶ 32. On July 23, 2007, the MSPB dismissed Bourdon's appeal of his termination without prejudice. Defs.' Mot., Ex. 3 (Initial Decision) at 1-2.

On November 13, 2007, the charges against Bourdon in York, Pennsylvania were dismissed. Am. Compl. ¶ 55. On November 19, 2007, more than five months after his removal from the Navy took effect, Bourdon filed an appeal with the MSPB requesting that the termination of his employment by the Navy be stayed. Defs.' Mot., Ex. 6 (Order Denying Stay Request) at 1. The basis for this request consisted solely of Bourdon's allegation that he "had previously [blown] the whistle for 'faulty equipment.'" Id. The request for a stay was denied on December 4, 2007. Id. In her Order denying the stay, MSPB Administrative Judge Sarah P. Clement remarked that Bourdon "did not explain how his alleged disclosure about 'faulty equipment' constituted whistleblowing[,] . . . gave no details concerning the contents or circumstances of his disclosure, . . . [and] . . . thus failed to explain in even rudimentary fashion how his removal could have been in reprisal for his whistleblowing." Id. at 2. A few months later, on March 18, 2008, Administrative Judge Clement dismissed Bourdon's appeal of his removal from federal service on the ground that it had been untimely filed. Defs.' Mot., Ex. 7 (Initial Decision).

Finally, at some point before December 23, 2009, Bourdon filed a complaint with the United States Office of Special Counsel ("OSC") alleging violations of personnel practices against management officials at the NDW.[5] See Pls.' Opp'n, Ex. E (December 23, 2009 Letter from the OSC to Bourdon) at 1. Bourdon asserted that he was "reprised against because of [his] whistleblowing activity between April 2004 and September 2006." Id.; see also Am. Compl. ¶¶ 38-43. By letter dated December 23, 2009, the OSC notified Bourdon that because of "the absence of information to establish a connection between [his] indefinite suspension, the termination action[,] and [his] protected activity, [the OSC had] no basis for further inquiry into

---

[5] The plaintiffs' initial complaint was filed in this Court on July 2, 2009.

4

[his] allegations." Pls.' Opp'n, Ex. E (December 23, 2009 Letter from the OSC to Bourdon) at 3. The letter also informed Bourdon that the OSC had "made a preliminary determination to close [their] inquiry into [his] complaint," and that "before [they] actually close[d] the file," they would give him thirteen days to submit a written response. Id. Bourdon was also advised that if the OSC did not hear from him within that time, they "anticipate[d] closing the file and . . . send[ing] [him] a letter terminating the investigation and advising [him] of any additional rights [he] may have." Id.

### B. Plaintiff Jeffrey Walls

Jeffrey Walls was employed by the NDW from April 2001 until May 8, 2009, Am. Compl. ¶ 3, as a police officer, id. ¶ 74. In September 2006 and 2007, Walls informed Colonel Larry Graves that several supervisors at the NDW were abusing their authority by misrepresenting the number of hours they worked and improperly receiving bonuses. Id. ¶¶ 59, 61. Walls states that Colonel Graves failed to pursue his allegations. Id.

On June 6, 2008, Colonel Graves proposed to suspend Walls for thirty days as a result of inappropriate conduct and negligent behavior that occurred on May 25, 2008. Id. ¶ 62. The conduct in question concerned Walls' response to a situation involving an intoxicated motorist who had "flagged [him] down" while he was on patrol in his car. See Defs.' Mot., Ex. 8 (Proposed Suspension for Thirty (30) Calendar Days) at 1-2. Walls submitted a written reply regarding the events, but the Navy upheld his suspension on June 26, 2008. See Defs.' Mot., Ex. 9 (Decision to Effect Your 30-Day Calendar Suspension). On July 24, 2008, Walls filed an appeal of his thirty-day suspension with the MSPB. Am. Compl. ¶ 65. The suspension was upheld on November 26, 2008. Id. ¶ 66.

Meanwhile, on July 19, 2008, Walls "was obliged to take leave as a result of an injury to his left knee that occurred while on duty." Id. ¶ 64. As a result of "his injury Walls was prescribed a daily medication to assuage his pain, required to wear knee braces . . . [,] and placed in physical therapy based on the recommendation made by his [Veterans Administration] physiciain." Id. Walls made requests to accommodate his disability, including "several requests to obtain . . . access to a Sport Utility Vehicle." Id. ¶ 68. These requests were unsuccessful, and Walls sustained another injury to his left knee in September 2008. Id. Walls was scheduled to return to duty on January 13, 2009, but was unable to do so because of complications with his knee and other family circumstances. Id. ¶ 69. Walls then submitted two requests for continued leave in February 2009, however, both were denied. Id. ¶ 70

On March 30, 2009, the Navy proposed to terminate Walls for Extensive Unauthorized Absence. Id. ¶ 72; Defs.' Mot., Ex. 11 (Proposed Removal) at 1. In its termination proposal, the Navy noted that Walls had been absent without leave for 428 hours and explained how Walls was previously "informed . . . that [he] needed to submit appropriate medical documentation to justify [his] continued absence." Defs.' Mot., Ex. 11 (Proposed Removal) at 1. On May 5, 2009, the Navy upheld Walls' proposed removal. Defs.' Mot., Ex. 12 (Decision Concerning Your Proposed Removal). The Navy noted that Walls' "unauthorized absence totals 77 days or 648 duty hours" and that this "excessive unauthorized absence . . . warrant[ed his] removal from the Federal service." Id. at 2. The termination became effective on May 9, 2009. Id. at 8.

On August 5, 2009, Walls filed a formal complaint of employment discrimination against the Navy, alleging that his "separation from Federal Service effective May 9, 2009 violated [his]

rights under the Rehabilitation Act of 1973 and CFR provisions." [6] Defs.' Mot., Ex. 13 (Formal Complaint of Employment Discrimination) at 1. On May 5, 2010, the Navy issued a final decision regarding Walls' employment discrimination complaint. Id., Ex. 16 (May 5, 2010 Letter to Walls) at 1. In its decision, the Navy concluded that Walls was not discriminated against on the basis of a physical disability when he was removed from federal service in May 2009. Id. The decision also stated that Walls' claims constituted a "mixed case," which was appealable to the MSPB as well as to the appropriate federal district court. See id. at 1-4.

On November 23, 2009, Walls filed an appeal with the MSPB, alleging that his termination from the Navy was in retaliation for his whistleblowing activity. See id., Ex 14 (MSPB Form 185-1). In his appeal, Walls identified several instances of his participation in whistleblowing activity from between 2006 and 2009. See id. at 6-13; see also Am. Compl. ¶¶ 59, 61, 67, 71. On January 5, 2010, MSPB Administrative Judge Raphael Ben-Ami dismissed Walls' appeal without prejudice, citing Walls' pending case in this Court. See id., Ex. 15 (Initial Decision) at 1-2. Five months later, on June 11, 2010, Walls filed an appeal with the MSPB in response to the Navy's final decision. Defs.' Mot., Ex. 17 (Appearance to Contest Jurisdiction/Notice of Appeal). On June 29, 2010, Administrative Judge Ben-Ami issued an initial decision dismissing Walls' appeal without prejudice. Defs.' Mot., Ex. 18 (Initial Decision). As of November 2010, Walls' claim with the MSPB remained pending. Defs.' Facts ¶ 21.

---

[6] Neither the Amended Complaint nor the plaintiffs' opposition brief make any reference to a violation of the Rehabilitation Act.

## II. STANDARDS OF REVIEW

### A.   Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." Curran v. Holder, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted).  When reviewing a motion to dismiss pursuant to Rule 12(b)(1), the Court must accept as true all of the factual allegations contained in the complaint.  Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  Under Rule 12(b)(1), "it is presumed that a cause lies outside [the federal courts'] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction, see, e.g., Hollingsworth v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C. 2006).  Therefore, the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted).  Furthermore, in determining whether it has jurisdiction over the case, the Court "may consider materials outside of the pleadings." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.   Motion To Dismiss Under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief may be granted.  Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).  For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to

8

relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds on which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." Hinson ex rel. N.H. v. Merritt Educ. Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (quoting Twombly, 550 U.S. at 555) (internal quotation marks and alterations omitted). As the Supreme Court recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). A complaint alleging facts which are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (brackets omitted). In evaluating a Rule 12(b)(6) motion, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice," E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted).

### III. LEGAL ANALYSIS

As noted at the outset of this opinion, the plaintiffs bring their claims under the Whistleblower Protection Act, 42 U.S.C. § 1983, and also based on a number of common law torts. Am. Compl. ¶¶ 1, 81-126. The federal defendants argue that the Court lacks subject matter jurisdiction over both the Whistleblower Protection Act and the tort claims because the plaintiffs failed to exhaust their administrative remedies as to those claims. Defs.' Mot. at 10-15. The federal defendants also maintain that the section 1983 claim should be dismissed because it fails to state a claim. Id. at 15-16. The Court will address these arguments in turn.

#### A.     The Whistleblower Protection Act Claim

Count I alleges violations of the Whistleblower Protection Act. Am. Compl. ¶¶ 81-101. That statute "provides most federal agency employees with protection against agency reprisals for whistleblowing activity, such as disclosing illegal conduct." Greenhouse v. Geren, 574 F. Supp. 2d 57, 64 (D.D.C. 2008). It is a "prohibited personnel practice" for a government agency to take a "personnel action" against an employee because of his disclosure of certain types of conduct. Weber v. United States, 209 F.3d 756, 757-58 (D.C. Cir. 2000).

Under Title 5 of the United States Code, an employee who believes that he is the victim of an unlawful reprisal in violation of the Whistleblower Protection Act must first bring his claim to the OSC, which is required to investigate the complaint. Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002) (citing 5 U.S.C. § 1214). In the event the OSC finds that a prohibited personnel action within the meaning of 5 U.S.C. § 2302 was committed, it reports its findings to the MSPB, and can petition the MSPB on the employee's behalf. Id. If the OSC finds no agency wrongdoing, then the employee may bring an action before the MSPB. 5 U.S.C. §§ 1221, 1214(a)(3). The MSPB's decision is appealable to the United States Court of Appeals for the

Federal Circuit, 5 U.S.C. § 7703, which reviews the claim on the administrative record under the arbitrary and capricious standard, id. § 7701(c), 7703(b)(1). "Under no circumstances does the [Whistleblower Protection Act] grant [a] District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." Stella, 284 F.3d at 142; see also Weber, 209 F.3d at 758 ("An employee who believes he has been the victim of a prohibited personnel practice must first complain to the OSC . . . .").

Applying that framework here, it is clear that the plaintiffs failed to exhaust their administrative remedies. According to the amended complaint, see Am. Compl. ¶ 81-101 ("Count I Violations of the Whistleblower Protection Act of 1989"),[7] the plaintiffs were required to bring their Whistleblower Protection Act claims to the OSC in the first instance. Stella, 284 F.3d at 142. They did not do so. Walls does not even allege that he filed a complaint with the OSC. Am. Compl. ¶¶ 59-80; Pl.'s Opp'n at 12-13. Neither does Bourdon. Am. Compl. ¶¶ 12-58. While Bourdon contends that the December 23, 2009 letter he received from the OSC establishes that he exhausted his administrative remedies, Pls.' Opp'n at 12-13, that theory is unavailing. For one thing, Bourdon filed his initial complaint in this Court on July 2, 2009, more than five months before the date of that letter. Moreover, the December 23, 2009 letter makes

---

[7] In their opposition, the plaintiffs surmise that they present a "mixed case" claim and therefore exhausted their administrative remedies under the framework applicable to those types of claims. See Pls.' Opp'n at 7-8, 12-13, 19-20. A mixed case claim under 5 U.S.C. § 7702 is an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination. Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999); see also Taylor v. Mabus, 685 F. Supp. 2d 94, 97-98 (D.D.C. 2010) (discussing the framework for mixed case claims). To be clear, the amended complaint does not assert a mixed case claim. Thus, in order to evaluate Count I under that theory, the Court would need to treat the plaintiffs' opposition as an amendment to the complaint. The Circuit has described four factors to consider in making this determination. See Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999). Three of those factors weigh heavily against the plaintiffs here: (1) they are represented by counsel, who signed the amended complaint and presumably could have drafted the document to assert a mixed case claim; (2) they could not have amended the amended complaint as a matter of right at the time they filed their opposition; and (3) they have not evinced any intent to change the amended complaint to allege a mixed case claim. As to the fourth factor, perhaps the federal defendants may not be unduly prejudiced given the fact that they addressed the mixed case issue in their reply. Defs.' Reply at 4-8. But that is at best one factor in favor of the plaintiffs, and will not carry the day. Accordingly, in its discretion, the Court refuses to consider the plaintiffs' opposition to constitute an amendment to their amended complaint.

clear that the OSC had reached only a "preliminary determination" to close their inquiry into Bourdon's allegations. See Pls.' Opp'n, Ex. E (December 23, 2009 Letter from the OSC to Bourdon) at 3. Although the letter alludes to Bourdon's prior experiences with the OSC, id. at 1, the federal defendants correctly point out that the letter specifically concerns Bourdon's allegations of whistleblowing and removal from federal service, allegations that are at issue in this case. Defs.' Reply at 3-4. Accordingly, the Court lacks subject matter jurisdiction to entertain the plaintiffs' Whistleblower Protection Act claims. Stella, 284 F.3d at 142.

### B.   Counts II Through VI

Counts II through VI assert a number of claims including Conspiracy to Violate Civil Rights (Count II), Am. Compl. ¶¶ 102-106; Violation of Civil Rights (Count III), id. ¶¶ 107-113; Breach of Fiduciary Duty (Count IV), id. ¶¶ 114-120; Abuse of Administrative Power (Count V), id. ¶¶ 121-23; and Intentional Infliction of Emotional Distress (Count VI), id. ¶¶ 124-126. It is not entirely clear which defendants the plaintiffs are seeking to sue, as the descriptions in these counts allege wrongdoing committed by individuals, such as "Graves and Merrit," who are not identified as parties in the amended complaint. Compare Am. Compl. ¶ 108, with id. ¶¶ 2-11. Based on their opposition, Pls.'s Opp'n at 20-21,[8] it appears that the plaintiffs' intent through the counts of their amended complaint is to impose liability upon the United States under 28 U.S.C. § 2680(h), a provision of the Federal Tort Claims Act ("FTCA") that permits the United States to be held liable for certain intentional torts committed by law enforcement officers of the United States government who were acting within the scope of their employment. See also 28 U.S.C. § 1346(b). The plaintiffs' theory seems to be that federal defendants Richard Gilbert and Harris

---

[8] See Pegram v. Herdric, 530 U.S. 211, 230 n.10 (2000) ("[W]e may use [the parties'] brief to clarify allegations in [their] complaint whose meaning is unclear." (citing Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1364 (1990))).

Cummings,[9] along with several other individuals who are also not listed as parties in the amended complaint, "conspired, aided and abetted[,] or acted in concert to facilitate Bourdon's false arrest as well as to effectuate the malicious prosecution of Bourdon," in York, Pennsylvania. Pls.' Opp'n at 23. For their part, the federal defendants argue that these claims should be dismissed for lack of subject matter jurisdiction because the United States is the proper defendant. Defs.' Mot. at 14. The Court agrees.

The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." Osborn v. Haley, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)). Although the federal defendants have not taken a position on whether Richard Gilbert and Harris Cummings were acting in the course of their official duties, the plaintiffs readily admit that this was the case. See Pls.' Opp'n at 23 ("At the time of the events noted above, Detectives Gilbert [and] Harris . . . were law enforcement officials for the United States Government acting within the scope of their employment . . . . ) (emphasis added). Accordingly, Richard Gilbert and Harris Cummings are immune from suit, and the FTCA is the appropriate vehicle to assert these claims. E.g., Lee v. United States, 570 F. Supp. 2d 142, 147 (D.D.C. 2008) ("The FTCA was designed to make civil actions against the United States the exclusive remedy for torts committed by federal employees within the scope of their employment, conferring absolute immunity on the employee."). Yet the amended complaint does not mention the FTCA or identify the United States as a defendant. Thus, because the plaintiffs elected to sue Richard Gilbert and Harris Cummings in their official

---

[9] The plaintiffs' opposition refers to a "Detective[] . . . Harris," Pls.' Opp'n at 23, but it is unclear whether this is the same person as federal defendant Harris Cummings, who is identified in the amended complaint as an investigator for the NDW. Am. Compl. ¶ 6. Because there are no other individuals in this action named Harris, the Court assumes that the plaintiffs are indeed referring to federal defendant Harris Cummings.

capacities rather than the United States, Counts II through VI must be dismissed for lack of subject matter jurisdiction. See Cox v. Sec'y of Labor, 739 F. Supp. 28, 29 (D.D.C. 1990).

### C. 42 U.S.C. § 1983

The plaintiffs also invoke 42 U.S.C. § 1983 as a basis for the Court's jurisdiction, Am. Compl. ¶ 1, but do not specifically assert a claim alleging a violation of this statute. Like the situation with their FTCA claims, however, the plaintiffs' opposition indicates that Bourdon alleges a section 1983 claim on the theory that "[v]arious officials and agents acting on behalf of [the] NDW aided and abetted or conspired with state officials in York, Pennsylvania to facilitate a false prosecution and to effectuate a false arrest of Bourdon for the purposes of a malicious prosecution."[10]  Pls.' Opp'n at 27.  The federal defendants move to dismiss Bourdon's claim for failure to state a claim, arguing that 42 U.S.C. § 1983 does not apply to them. Defs.' Mot. at 15-16; Defs.' Reply at 10-11.  The federal defendants' position is well taken, but the Court believes that their arguments also implicate the Court's subject matter jurisdiction.  Therefore, the Court will consider Bourdon's section 1983 claim under Rule 12(b)(1).

As the Court previously observed, supra n.2, the federal defendants are sued in their official capacities. E.g., Am. Compl. ¶ 4.  A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Thus, the Court proceeds as if Bourdon's § 1983 claim against the federal defendants was brought against the United States itself. See Partovi v. Matuszewski, 647 F. Supp. 2d 13, 17 (D.D.C. 2009) (construing a § 1983 claim against Immigration and Customs Enforcement

---

[10] Walls does not appear to assert a claim under 42 U.S.C. § 1983. Pls.' Opp'n at 24-27.

14

employees in their official capacities as one brought directly against the United States), aff'd, 2010 WL 3521597 (D.C. Cir. Sept. 2, 2010).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). Such consent must be "unequivocally expressed." United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992). The doctrine of sovereign immunity, then, bars suits against the United States unless immunity is specifically waived by statute. United States v. Sherwood, 312 U.S. 584, 586 (1941). Sovereign immunity extends to government agencies and to their employees where such employees are sued in their official capacities. FDIC v. Meyer, 510 U.S. 471, 483-86 (1994); see Clark v. Library of Congress, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity . . . bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government.").

Here, Bourdon has not identified any authority from which a waiver of sovereign immunity may be found with respect to his claim that the federal defendants "aided and abetted or conspired with state officials in York, Pennsylvania" to effectuate a false arrest and facilitate a malicious prosecution against him. Pl.'s Opp'n at 27. Thus, the Court lacks subject matter jurisdiction over Bourdon's claims for money damages against the United States and its agencies. Accordingly, to the extent that Bourdon asserts a claim against the federal defendants under 42 U.S.C. § 1983, that claim will be dismissed under the doctrine of sovereign immunity. See Partovi, 647 F. Supp. 2d at 18 (relying on sovereign immunity as the basis to dismiss § 1983 claims brought against two employees of the Department of Homeland Security who were sued in their official capacities); Johnson v. Williams, 699 F. Supp. 2d 159, 165-66 (D.D.C. 2010) (Walton, J.) (concluding that sovereign immunity barred § 1983 claims against a federal agency

and several of its employees who were sued in their official capacities); see also Dye v. United States, 516 F. Supp. 2d 61, 71 (D.D.C. 2007) (dismissing statutory damages claims against the United States for lack of subject matter jurisdiction because 42 U.S.C. § 1983 does not "authorize suits challenging actions taken under color of federal law nor waive the United States' sovereign immunity") (internal citation and quotation marks omitted).

## IV. CONCLUSION

For the reasons stated above, Count I will be dismissed for lack of subject matter jurisdiction because the plaintiffs failed to exhaust their administrative remedies. Similarly, Counts II through VI will be dismissed for lack of subject matter jurisdiction because federal defendants Richard Gilbert and Harris Cummings are immune from suit. Finally, insofar as Bourdon asserts a claim under 42 U.S.C. § 1983 against the federal defendants, that claim will be dismissed for lack of subject matter jurisdiction because that claim is barred under the doctrine of sovereign immunity.

**SO ORDERED** this 28th day of September, 2011.[11]

REGGIE B. WALTON
United States District Judge

---

[11] An appropriate order will be issued contemporaneously with this memorandum opinion.